UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

EDDIE ASHLEY, LSW INDUSTRIES, INC.,
and ASHLEY TECHNOLOGIES CORP.,

                                    Plaintiffs,

                -vs-                                          99-CV-986C

EASTMAN KODAK COMPANY,

                                    Defendant.
_____

        Defendant Eastman Kodak Company ("Kodak") moves pursuant to Rule 56 of the

Federal Rules of Civil Procedure for summary judgment dismissing this action on the

ground that the claims asserted in the complaint are barred by principles of *res judicata* as

the result of final judgment entered in New York State Supreme Court, Monroe County, in

*Eastman Kodak Company v. LSW Industries, Inc.*, Index No. 99-9863 (October 23, 2002),

*aff'd*, 6 A.D.3d 1123, 775 N.Y.S.2d 684 (4th Dep't April 30, 2004).  For the reasons that

follow, defendant's motion is granted.

## BACKGROUND

        The following facts are set forth in the pleadings, including defendant's "Statement

of Material Facts Not In Dispute" (Item 68) filed in accordance with Rule 56.1 of the Local

Rules of Civil Procedure for the Western District of New York.[1]

_____

        [1]Rule 56.1 of the Local Rules of Civil Procedure governs the submission of statements of fact in
connection with motions for summary judgment, and requires both the movant and the non-movant to
submit a "separate, short, and concise statement of the material facts . . . ."  Local Rule 56.1(c) provides
that "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed
to be admitted unless controverted by the statement required to be served by the opposing party."  In this
case, despite ample opportunity to do so, plaintiffs submitted no such statement, but instead merely
submitted a 3-page attorney's "Affirmation In Opposition" (Item 71).  Accordingly, the facts set forth in the

Plaintiff Eddie Ashley, an African-American, is a shareholder in Ashley Technologies Corp. ("ATC") and a principal of ATC's wholly owned subsidiary, LSW Industries, Inc. ("LSW"). On December 14, 1995, plaintiff signed an agreement with Kodak, whereby LSW agreed to supply Kodak with wooden pallets and pallet services for a period of seven years beginning in 1995. The agreement provided that Kodak would purchase "not less than 18% of the total annual pallet and pallet services requirements at Kodak's Rochester, New York facilities . . ." from LSW, and LSW would be compensated at "market competitive rates" (Item 68, Ex. 3, p. 2).

On September 22, 1999, Kodak commenced the above-referenced state court action (Index No. 99-9863) against LSW and ATC seeking judgment declaring that LSW had breached its obligations under the agreement, and that Kodak was therefore entitled to terminate the contract. The complaint set forth causes of action for breach of contract, unjust enrichment, conversion, and fraudulent misrepresentation based on allegations that LSW had failed to maintain the agreed-upon inventory and had failed to reimburse Kodak for raw materials purchased for LSW's benefit (see Item 68, Ex. 2). On November 19, 1999, LSW and ATC answered the complaint and asserted affirmative defenses and counterclaims alleging that Kodak had failed to substantially perform its obligations under the contract and had fraudulently induced LSW to enter into the agreement (Item 68, Ex. 4). Then, on December 28, 1999, plaintiffs Ashley, LSW, and ATC filed a separate state court action against Kodak (Index No. 99-3518), seeking an order compelling Kodak

---

defendant's statement of fact are deemed admitted for purposes of ruling on the motion for summary judgment. *See Bizo v. Excellus Health Plan, Inc.*, 2005 WL 351057, at *1 n.1 (W.D.N.Y., February 08, 2005).

to continue to honor the December 14, 1995 agreement (Item 68, Ex. 5).  Both cases were assigned to Hon. Thomas A. Stander, J.S.C., in Commercial Term.

Meanwhile, on December 10, 1999, plaintiffs filed this federal court action seeking relief under 42 U.S.C. § 1981, alleging that Kodak's breach of its obligations under the December 14, 1995 agreement was based upon race (Item 1).   The complaint was amended as of right on December 22, 1999 (Item 3).   Kodak answered and asserted counterclaims identical to the causes of action it had previously raised in the initial state court action (Item 10).   Plaintiffs subsequently filed a motion for leave to amend the complaint a second time in order to assert antitrust and RICO (Racketeer and Corrupt Organizations Act) causes of action (*see* Item 11).   Kodak responded to the motion to amend, and filed a motion to stay the federal court action pending final judgment in the state court cases, pursuant to the abstention doctrine of *Colorado River Water Conservation District v. United States*, 424 U.S. 800 (1976)[2] (*see* Item 19).   When this court denied both the motion for abstention (*see* Item 37) and the motion to amend the pleadings (*see* Item 50), the parties ultimately agreed to stay the federal proceedings pending the outcome of the state court dispute (*see* Item 55).

In an order delivered from the bench on September 13, 2003, Justice Stander granted Kodak's motion for summary judgment in No. 99-9863, dismissing the action in its entirety (Item 68, Ex. 14).  Justice Stander found that the December 14, 1995 agreement

---

[2]In *Colorado River*, the Supreme Court held that a court may, under "exceptional circumstances," abstain from exercising jurisdiction in order to conserve federal judicial resources where the resolution of an existing concurrent state court litigation could result in "comprehensive disposition" of the matter.  424 U.S. at 813, 817-18.  Upon considering the factors established by *Colorado River* and its progeny for determining whether to abstain, this court denied Kodak's motion for a stay, noting that "[i]f Kodak wins in state court, then plaintiffs could not win in federal court because the contractual basis of their discrimination claim would be decided on collateral estoppel grounds."  (Item 37, p. 1).

was unambiguous, and that Kodak had performed its contractual obligation to pay LSW market competitive prices for pallets and pallet services.   He also found that LSW breached the agreement by failing to maintain required inventory in the amount of $36,197.00, and by failing to deliver $46,448.64 worth of finished pallets.  Justice Stander also dismissed LSW's counterclaims for fraudulent inducement and misrepresentation (*id.*). By written order dated October 18, 2002, Justice Stander entered judgment in favor of Kodak in the amount of $86,646.00 (Item 68, Ex. 15).  On April 30, 2004, the Appellate Division, Fourth Department, unanimously affirmed.  *Eastman Kodak Company v. LSW Industries, Inc.*, 6 A.D.3d 1123, 775 N.Y.S.2d 684 (4th Dep't 2004).

Kodak now moves for summary judgment dismissing this action on the ground that it is barred by principles of *res judicata.*  For the reasons that follow, Kodak's motion is granted.

## DISCUSSION

The doctrine of *res judicata*, or "claim preclusion,"[3] makes a final, valid judgment on the merits of a case "'conclusive on the parties, and those in privity with them, as to all matters, fact and law, [that] were or should have been adjudicated in the proceeding.'" *Waldman v. Village of Kiryas Joel*, 207 F.3d 105, 108 (2d Cir. 2000) (quoting Wm. James Moore, *Moore's Federal Practice* ¶ 0.405[1], at III-7 (2d ed. 1996)).  The judgment

---

[3]This doctrine is separate and distinct from the doctrine of collateral estoppel, or "issue preclusion," which precludes a party from raising an issue in a proceeding if (1) the identical issue was raised in a previous proceeding, (2) the issue was actually litigated and decided in the previous proceeding, (3) the party had a full and fair opportunity to litigate the issue, and (4) the resolution of the issue was necessary to support a valid and final judgment on the merits.  *Central Hudson Gas & Elec. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995).

"is a finality as to the claim or demand in controversy, concluding parties and those in privity with them, not only as to every matter which was offered and received to sustain or defeat the claim or demand, but as to any other admissible matter which might have been offered for that purpose."

*Securities and Exch. Comm'n v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1463 (2d Cir. 1996) (quoting *Nevada v. United States*, 463 U.S. 110, 129-30 (1983)), *cert. denied*, 522 U.S. 812 (1997).

The party seeking to establish the preclusive effect of a prior judgment must show that (1) the previous action involved an adjudication on the merits, (2) the previous action involved the plaintiffs or those in privity with them, and (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action. *Monahan v. New York City Dept. of Corrections*, 214 F.3d 275, 285 (2d Cir.), *cert. denied*, 531 U.S. 1035 (2000). It is beyond dispute in this case that the judgment entered in state court involved an adjudication on the merits of the contractual dispute between the parties. Accordingly, the only question for this court is whether plaintiffs' Section 1981 "discriminatory breach of contract" claim was, or could have been, raised in state court.

The focus of this inquiry is whether the second suit involves the same claim, or "nucleus of operative fact," as the first suit. *Interoceanica Corp. v. Sound Pilots, Inc.*, 107 F.3d 86, 90 (2d Cir. 1997) (quoting *Apparel Art International, Inc. v. Amertex Enterprises Ltd.*, 48 F.3d 576, 583 (1st Cir. 1995)). This determination depends on whether "'the transaction or connected series of transactions at issue in both suits is the same, that is, where the same evidence is needed to support both claims, and where the facts essential to the second were present in the first.'" *Id.* at 91, quoting *Securities and Exch. Comm'n v. First Jersey Secs., Inc.*, 101 F.3d at 1464; *see National Labor Relations Bd. v. United*

*Techs. Corp.*, 706 F.2d 1254, 1260 (2d Cir. 1983).  The Second Circuit has identified the following factors for courts to consider when conducting this inquiry: (1) whether the facts are related in time, space, origin, or motivation, (2) whether the facts form a convenient trial unit, and (3) whether treating the facts as a unit conforms to the parties' expectations. *Waldman*, 207 F.3d at 108.  "[Second Circuit] cases consistently hold that the facts essential to the barred second suit need not be the same as the facts that were necessary to the first suit.  It is instead enough that 'the facts essential to the second were [already] present in the first.'" *Id.* at 110-11 (quoting *Computer Associates International, Inc. v. Altai, Inc.*, 126 F.3d 365, 369 (2d Cir. 1997), *cert. denied*, 523 U.S. 1106 (1998)); *see also Interoceanica*, 107 F.3d at 91.

There can be no question in this case that the facts underlying the matters adjudicated by Justice Stander and the matters set forth in the plaintiffs' federal complaint are rooted in the same nucleus of operative facts.   The entire federal cause of action is centered on Kodak's alleged failure to perform its obligations under the December 14, 1995 agreement (*see* Item 3, ¶¶ 21-30), and that the failure to perform was "based solely on the fact that the plaintiff Eddie Ashley is of the African-American race" (*id.*, ¶ 32).  These allegations are substantially related in time, space, origin, and motivation to the facts ruled upon by Justice Stander and the Fourth Department.  Specifically, Justice Stander found as follows:

> The intent of the parties as expressed in the Letter Agreement is that Ashley would provide pallets and/or pallet services at market competitive rates, with pricing to be benchmarked by formal quotation processes and other analytical means.  The parties agreed to work together to determine the fair selling price/profit margin for Ashley.  . . .

The evidence presented on this motion for summary judgment shows that Kodak performed formal quotation processes and other analytical means to assess and determine pricing that it would accept for pallets. The defendants [LSW and ATC] have failed to show a question of fact that the prices paid by Kodak were not at market competitive prices. The facts establish that the prices paid to LSW for pallets and pallet services was at or above market rates paid to other suppliers for the same goods and services.

(Item 68, Ex. 14, pp. 3-4). As already discussed, Justice Stander not only found that Kodak had performed its contractual obligations, but he also found that LSW breached the agreement by failing to maintain required inventory and failing to deliver finished product (*see id.* at pp. 5-6).

Clearly, the transactions at issue in both suits are the same, and the facts necessary to support plaintiffs' "discriminatory breach of contract" claim in this case were "already present" in the state court action. *Waldman*, 207 F.3d at 111. Both actions are centered around the parties' performance of their contractual obligations under the December 14, 1995 agreement, and the reasons for Kodak's termination of the agreement. There is nothing in the record now before the court to suggest that further discovery would yield any additional support for plaintiffs' claim that the agreement was terminated by Kodak because of Mr. Ashley's race, and not–as Justice Stander found–as the result of LSW's breach. Under these circumstances, this court has little problem concluding that the facts underlying both suits form a convenient trial unit, and that treating them as such would conform to the parties' reasonable expectations.

Indeed, plaintiffs do not dispute that the state and federal actions are based on the same nucleus of operative facts with respect to Kodak's performance of its contractual obligations. Instead, plaintiffs maintain that this court should not accord preclusive effect

to the state court judgment because the discrimination claim raised in this action under 42 U.S.C. § 1981 is governed by federal law, and remains undecided (Item 71, ¶ 6).  This contention is based on a misreading of the law, and must be rejected.

It well established that a plaintiff cannot avoid the effects of *res judicata* by "splitting" a claim into various suits, based on different legal theories.  *Waldman*, 207 F.3d at 110 (citing *Woods v. Dunlop Tire Corp.*, 972 F.2d 36, 39 (2d Cir. 1992), *cert. denied*, 506 U.S. 1053 (1993); 1B *Moore's Federal Practice* ¶ 0.410[2]).  As stated by the Second Circuit, "[i]t is [the] identity of facts surrounding the occurrence which constitutes the cause of action, not the legal theory upon which [the plaintiff] chose to frame [the] complaint." *Woods*, 972 F.2d at 39 (citing *Berlitz Sch. of Languages of Am., Inc. v. Everest House*, 619 F.2d 211, 215 (2d Cir. 1980) ("[W]hatever legal theory is advanced, when the factual predicate upon which claims are based are substantially identical, the claims are deemed to be duplicative for purposes of *res judicata*.")).  In other words, *res judicata* applies regardless of whether in the state court action plaintiffs chose to focus their defense and counterclaims on Kodak's alleged failure to perform, rather than on the discriminatory animus alleged in this action.  *See Waldman*, 207 F.3d at 110.

Plaintiffs also rely on the Supreme Court's holding and rationale in *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411 (1964), for the proposition that "a litigant who has properly invoked the jurisdiction of a Federal District Court to consider federal constitutional claims can [not] be compelled, without his consent and through no fault of his own, to accept instead a state court's determination of those claims."  *Id.* at 415. In *England*, the plaintiffs were a group of chiropractors who had commenced an action in

federal court challenging on federal constitutional grounds a Louisiana state statute establishing educational requirements for medical practice.  The district court abstained under the doctrine of *Railroad Commission v. Pullman Co.*, 312 U.S. 496 (1941), on the ground that a state court decision interpreting the statute could moot the constitutional claims.  The plaintiffs then voluntarily submitted both the state law and constitutional claims to the state court, which decided them adversely to plaintiffs.  Upon returning to federal court, the plaintiffs were met with a motion to dismiss, which the district court granted on the ground that it lacked the power to review the Louisiana state court's rulings, including that denial of the federal constitutional claim.  The Supreme Court eventually reversed and remanded, holding that the plaintiffs could have avoided the preclusive effect of the state court's rulings by informing the state court that they intended to return to federal court to pursue the federal claims should the state court rule against them on the question of state law.  *England*, 375 U.S. at 421-22.

I find the holding in *England* to be inapplicable here.  By its express language, *England* applies only to "cases where, but for the application of the abstention doctrine, the primary fact determination would have been by the District Court," *id.* at 417, and where the party seeking to avoid preclusion has not otherwise elected to forgo the right to litigate federal claims fully in the federal courts by willingly submitting to the jurisdiction of the state tribunal.  *Id.* at 417-18.  In this case, the court refused to invoke the *Colorado River* abstention doctrine, and plaintiffs voluntarily submitted to state court jurisdiction by answering, counterclaiming, and initiating a separate state court action without any

reservation of their right to avail themselves of federal court jurisdiction in the event of an adverse determination.

Furthermore, the Second Circuit has limited the holding of *England* to *Pullman* abstention cases. *See Temple of the Lost Sheep Inc. v. Abrams*, 930 F.2d 178 (2d Cir.), *cert. denied*, 502 U.S. 866 (1991); *Hoblock v. Albany County Bd. of Elections*, 341 F.Supp.2d 169, 174 (N.D.N.Y. 2004). Accordingly, even if this court had seen fit to abstain under *Colorado River*, and even if plaintiffs had not willingly submitted to state court jurisdiction over the parties' contractual dispute, *England*'s limitation on the preclusive effect of the state courts' rulings would not apply.

Finally, Kodak's reliance on *Carr v. Health Insurance Plan of Greater New York, Inc.*, 111 F.Supp.2d 403 (S.D.N.Y. 2000), is persuasive. In that case, the plaintiff was an African-American orthopedic surgeon employed by a medical practice group which had contracted with an HMO to provide medical services to its customers. The contract required physicians affiliated with the group to obtain board certification in their respective specialties. When the plaintiff failed to obtain board certification, the HMO notified him that he would no longer be allowed to provide care for its patients, and the group eventually terminated his employment. In 1996, the plaintiff commenced a contract action in state court by way of a motion for a preliminary injunction seeking to enjoin the practice group and the HMO "from terminating plaintiff's employment with [the Group] or his ability to provide medical services to patients insured" by the HMO. *Id.* at 407. The state court denied his motion for preliminary injunctive relief, and eventually granted the defendants' summary judgment motion upon default.

-10-

The plaintiff subsequently brought an action in federal court in 1999 alleging that the practice group and HMO violated his federally protected right to contract under 42 U.S.C. § 1981, and the defendants moved for summary judgment on the grounds of *res judicata*. The district court granted the defendants' motion, finding that the plaintiff's § 1981 claim was barred by the prior adjudication of his state court contract claim.  The court stated:

> [I]t can hardly be doubted that plaintiff's [discrimination] claim springs from the same triable group of underlying facts as his previous state action.  The papers Carr submitted in support of his [prior] action clearly show that he was aware at least 57 other doctors were allegedly being treated differently than he was.  Had plaintiff pursued his state action, and not defaulted on it once he was denied preliminary relief, he would have been entitled to explore the reasons that he was allegedly being treated differently than the 57 other doctors. As a result, the motivation for this alleged differential treatment should have been adjudicated in the prior proceeding. The fact that in 1996, plaintiff brought a contract action, and now he brings a race discrimination action is immaterial. . . .  Both claims raise questions "related in time, space, origin, [and] motivation, [and] they form a convenient trial unit."

*Carr*, 111 F.Supp.2d at 410 (quoting *Waldman*, 207 F.3d at 110).[4]

Similarly, there can be no doubt in this case that plaintiffs' discrimination claim arises from the same nucleus of operative facts as the claims adjudicated by Justice Stander in the state court action.  The record before the court contains no indication that, in the pursuit of discovery to support their state court defenses and counterclaims, plaintiffs were in any way prevented from exploring Kodak's motivation for its contractual dealings. The fact that the state court litigation focused on contractual performance rather than the motivation underlying Kodak's dealings with plaintiffs is immaterial.  Simply put, the claims

---

[4]The court denied the defendants' motion for summary judgment with respect to the plaintiff's claims that he was subject to racial and retaliatory discrimination when his subsequent employment applications were rejected in 1998, and again in 1999, finding that these claims were not subject to *res judicata* preclusion because they accrued after the 1996 state court litigation was complete.  *Carr*, 111 F.Supp.2d at 411.

in both the state and federal actions are based upon substantially identical facts, raising questions related in time, space, origin, and motivation.

Based on this analysis, the court finds that defendant has met its burden to establish that plaintiffs' § 1981 claim in this action is precluded by application of the principles of *res judicata* as the result of final judgment entered by Justice Stander in *Eastman Kodak Company v. LSW Industries, Inc.*, Index No. 99-9863.   Accordingly, there is no genuine issue of material fact for trial, and defendant is entitled to summary judgment dismissing the complaint as a matter of law.  Fed. R. Civ. P. 56(c).

## **CONCLUSION**

For the foregoing reasons, defendant's motion for summary judgment (Item 66) is granted, and the case is dismissed in its entirety.  The Clerk of the Court is directed to enter judgment in favor of defendant.

So ordered.

\s\ John T. Curtin
JOHN T. CURTIN
United States District Judge

Dated: June   20  , 2005

p:\pending\1999\99-986.apr12.05.sj